UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00495-GNS-RSE

TROY DUNCAN, et al.                                                                                          PLAINTIFFS

v.

JEFFERSON COUNTY BOARD OF EDUCATION
d/b/a JEFFERSON COUNTY PUBLIC SCHOOLS, et al.                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Partial Motion to Dismiss (DN 9) and Motion to Strike Class Allegations (DN 10). The motions are ripe for adjudication. For the following reasons, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**, and Defendants' Motion to Strike is **DENIED**.

### I.   STATEMENT OF FACTS

Plaintiffs Troy Duncan, Robert Newton ("Newton"), Netney Taylor ("Taylor"), Sandra Easley ("Easley"), Kevan Sheppard ("Sheppard"), and Sandra Spaulding ("Spaulding") (collectively "Plaintiffs") comprise a group of African American employees who have worked in the Operations Services Division ("OSD") of the Jefferson County Board of Education d/b/a Jefferson County Public Schools ("JCPS"). (Compl. ¶¶ 1-7, 21, 28, 38, 49, 63, 72, DN 1-2). Plaintiffs brought claims on behalf of themselves and four-subclasses of employees alleging violations of 42 U.S.C. §§ 1981 and 1983, and the Kentucky Civil Rights Act, KRS 344.040, 344.280. (Compl. ¶¶ 85-102). Easley also brought claims of race and age discrimination in violation of federal law. (Compl. ¶¶ 103-08). In addition to JCPS, the following individuals are named as Defendants in their official and individual capacities: Dr. Michael Raisor ("Raisor"), Chief Operations Officer of the OSD; Robert Tanner ("Tanner"), Director of Property

1

Management of the OSD; Kelly Kirk ("Kirk"), General Manager and Housekeeping Manager of the OSD; and Dr. Anthony Johnson ("Johnson"), Training Specialist of the OSD (collectively "Individual Defendants"). (Compl. ¶¶ 7, 10-13). Defendant then removed the case to federal court. (Notice Removal, DN 1).

Defendants filed an Answer responding to Plaintiffs' allegations and notifying the Court in a footnote that a dispositive motion attacking the sufficiency of the allegations on behalf of the Individual Defendants would follow. (Defs.' Answer 4 n.1, DN 7). Defendants then moved to strike the class allegations pursuant to Fed. R. Civ. P 12(f), and to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(1) and 12(b)(6). (Defs.' Mot. Strike, DN 9; Defs.' Partial Mot. Dismiss, DN 10). The motions have been fully briefed and are ripe for adjudication.

## II.     DISCUSSION

### A.     Motion to Dismiss/Motion for Judgment on the Pleadings

Defendants have moved to dismiss the claims asserted against the Individual Defendants in their individual capacities, and under Sections 1981 and 1983. (Defs.' Partial Mot. Dismiss 6-15). In response, Plaintiffs assert that Defendants' motion is untimely and should be treated as a motion for judgment on the pleadings, which Defendants do not dispute. (Pls.' Resp. Defs.' Partial Mot. Dismiss & Mot. Strike 5-6 n.1, DN 14 [hereinafter Pls.' Resp.]; Pls.' Resp. 5-6 n.1; Defs.' Reply Partial Mot. Dismiss & Mot. Strike 5, DN 16 [hereinafter Defs.' Reply]).

#### 1.     *Timeliness*

As a preliminary matter, the parties are correct that Defendants' motion was untimely to the extent that it was based on Fed. R. Civ. P. 12(b)(6). As this Court has noted:

> Rule 12(b) requires that a motion asserting a 12(b)(6) defense "be made before pleading." Fed. R. Civ. P. 12(b). Even so, as a matter of practice, a 12(b)(6) motion erroneously filed after an answer "may be properly considered as one for judgment on the pleadings under [Rule 12(c)]) . . . ."

2

*Vanheck by & through Vanheck v. Marion Cty.*, No. 3:17-CV-00653-RGJ-RSE, 2019 WL 2717773, at *2 (W.D. Ky. June 28, 2019) (citation omitted). Because Defendants' motion was filed ten days after their answer, and the Court will consider Defendants' motion as being brought under Fed. R. Civ. P. 12(c).

### 2.  *Merits of Motion*

In their motion, Defendants seek dismissal of the claims asserted against the Individual Defendants in their individual capacities, and further challenge Plaintiffs' Section 1981 and 1983 claims. In general, Rule 12(c) motions are analyzed under the same standard as Rule 12(b)(6) motions to dismiss for failure to state a claim. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal quotation marks omitted) (citation omitted). Courts need not, however, "accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citation omitted). A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Winget*, 510 F.3d at 582 (internal quotation marks omitted) (citing *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

#### a.  **Easley's Title VII claims**

Defendants moved to dismiss Easley's race discrimination claims against the Individual Defendants and her age discrimination against all Defendants, as Title VII neither provides liability for individuals, nor prohibits age discrimination. (Defs.' Partial Mot. Dismiss 6-7). In their

3

response, Plaintiffs acknowledged that "Defendants' arguments concerning the Plaintiff, Sandra Easley's claims under Title VII are well-taken." (Pls.' Resp. 7 n.1). As Plaintiffs concede that Easley's claims cannot proceed against the Individual Defendants, nor impose liability for age discrimination, these claims will be dismissed.

### b. KCRA Claims

Defendants moved to dismiss Plaintiffs' KRS 344.040 claims against the Individual Defendants, arguing that KRS 344.040 does not impose individual liability, and the allegations in the Complaint are insufficient to allege a conspiracy under KRS 344.280. (Defs.' Partial Mot. Dismiss 7-10). In their response, Plaintiffs likewise concede that the claims under KRS Chapter 344 claims are not being asserted against the Individual Defendants in their individual capacities. (Pls.' Resp. 8-9). Accordingly, the motion will be granted on this basis.

### c. Section 1983 Claims

Defendants further seek dismissal of the Section 1983 claims against the Individual Defendants for failure to state a claim and lack of jurisdiction based on sovereign immunity for the Individual Defendants, in their official capacity, and JCPS, as a state actor. (Defs.' Partial Mot. Dismiss 10-15).

#### i. Official Capacities Claims

Plaintiffs failed to respond to Defendants' argument that the Individual Defendants are immune from suit in their official capacities. This issue, however, has been addressed:

> As a division of local government, [JCPS] may be sued directly. Moreover, its employees may be sued for constitutional violations under two concurrent legal theories: (1) the employee may be sued in her official capacity; and (2) the employee may be sued in her personal (sometimes called "individual") capacity. . . .
>
> Suing a government employee in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."

4

> "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Here, [JCPS] did receive notice of this suit against its employees and itself, and has responded appropriately. Thus, any judgment against the individual defendants in their official capacities will, in reality, be a judgment against [JCPS] and will only be collectible against [JCPS].

*Baar v. Jefferson Cty. Bd. of Educ.*, 686 F. Supp. 2d 699, 703-04 (W.D. Ky. 2010), *aff'd*, 476 F. App'x 621 (6th Cir. 2012) (internal citations omitted).

Because Plaintiffs have sued JCPS in this action, these official capacity claims against the Individual Defendants will be dismissed.

### ii. Individual Capacity Claims

Defendants also contend Plaintiffs failed to state a claim against the Individual Defendants for violating Section 1981 and Section 1983. (Defs.' Partial Mot. Dismiss 10). Plaintiffs Newton, Taylor, and Easley alleged that they were not hired for or promoted to a position for which they were otherwise qualified due to their race. (Compl. ¶ 96). Plaintiffs Duncan, Sheppard, and Spaulding claim they were subjected to a hostile work environment because of their race. (Compl. ¶ 98). Defendants argue that Plaintiffs failed to allege a specific act of discrimination or retaliation by any individual Defendant, but have merely pointed the finger to generic identifiers like "Defendants" or the "upper echelon of management" within their complaint and made conclusory allegations that "Defendants knew or should have known about the harassment or discrimination and failed to act." (Defs.' Partial Mot. Dismiss 12-13). Plaintiffs responded that they have alleged enough facts for the Court to conclude the Defendants were involved in the hiring process, and "that [this] is more than enough to satisfy their burden." (Pls.' Resp. 9).

Section 1981 prohibits discrimination in the making and enforcement of private contracts. *McCormick v. Miami Univ.*, 693 F.3d 654, 659 (6th Cir.2012). Section 1981 provides that all persons within the United States "shall have the same right in every State . . . to make and enforce

contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). "The express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units [and individuals] . . . ." *Arendale v. City of Memphis*, 519 F.3d 587, 599-600 (6th Cir. 2008) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)); *see also McCormick*, 693 F.3d at 660.

When imposing liability on a government employee under Section 1983, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added). Government employees cannot be held liable either under vicarious liability based solely on the right to control employees, or through a simple awareness of an employees' misconduct. *See Woodcock v. City of Bowling Green*, 165 F. Supp. 3d 563, 594 (W.D. Ky. 2016), *aff'd in part, rev'd in part sub nom. Woodcock v. City of Bowling Green*, 679 F. App'x 419 (6th Cir. 2017). Likewise, neither the acts of a subordinate nor a supervisor's failure to act is sufficient to plead a defendant directly violated the plaintiff's rights. *Id.* The supervisor must, rather, "either encourage[] the specific incident of misconduct or in some way directly participate[] in it." *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir.2002) (quoting *Hays v. Jefferson Cty.*, 668 F.2d 869, 874 (6th Cir. 1982)).

### iii. Section 1981 - Hostile Work Environment Claim

To state a Section 1981 claim based on a hostile work environment, an employee must allege that:

> (1) [the employee] belongs to a protected group, (2) [he or she] was subject to unwelcome harassment, (3) the harassment was based on [his or her] protected status, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act.

*Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019) (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013)). While a plaintiff need not allege each and every element of a prima facie case, he or she must "provide 'an adequate factual basis' for a [hostile work environment claim]" and "allege sufficient 'factual content' from which a court could 'draw the reasonable inference' of . . . discrimination." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *James v. Hampton*, 592 F. App'x 449, 460-61 (6th Cir. 2015).

### a) Sheppard & Spaulding

Both Sheppard and Spaulding allege they were subject to a hostile work environment, and both rest on the theory that "the upper echelon of management" refused to remedy the environment after they were notified. (Compl. ¶ 69, 74).

Sheppard is a black male currently employed as a custodian by JCPS who alleges that a coworker, Penny Paschel, subjected him to a hostile work environment through a litany of inappropriate interactions. (Compl. ¶ 64). In response to these incidents, Sheppard alleges he filed a written complaint. (Compl. ¶ 65). Roughly a month later, Sheppard had a meeting with his supervisor who informed him that he would be transferred because he "didn't fit". (Compl. ¶ 66). Sheppard questioned the decision but was never given an answer. (Compl. ¶ 66). Sheppard then filed a discrimination grievance against his Area Supervisor and was promptly informed that he was being placed under investigation for allegedly discriminating based on sex.[1] (Compl. ¶¶ 67-

---

[1] It is unclear from the Complaint who informed Sheppard of the investigation or who in fact investigated him.

7

68). Sheppard then filed another complaint based on harassment and retaliation "with the upper echelon of management within the [OSD], including the named JCPS Defendants . . . ." (Compl. ¶ 69). Sheppard has not alleged what followed his grievance-complaint.

Spaulding is a black female currently employed as a custodian by JCPS between July 2018 and March 2019 who was employed through JCPS at Minor Daniel Academy. (Compl. ¶¶ 72-73). Like Sheppard, Spaulding alleges that while located on site, her supervisor, Sara Smith ("Smith"), subjected her to a hostile work environment. (Compl. ¶ 73). Spaulding lists numerous inappropriate exchanges and retaliatory actions taken by Smith. (Compl. ¶ 73). Spaulding alleges that she "made the upper echelon of management within the Operations Services Division, including the named JCPS Defendants, aware of the foregoing, but there were no corrective actions or consequences whatsoever." (Compl. ¶ 74).

Both Sheppard's and Spaulding's allegations merely claim a failure to respond to a grievance-complaint, which is insufficient. For example, in *Shehee v. Luttrell*, the plaintiff brought a retaliation claim against her supervisors alleging only their "denial of his administrative grievances and their failure to remedy the alleged retaliatory behavior." *Shehee*, 199 F.3d at 300. The Sixth Circuit dismissed the complaint because there was "no allegation that any of these defendants directly participated, encouraged, authorized or acquiesced in the claimed retaliatory acts against [the plaintiff] . . . ." *Id.* The same is true here. Alleging that the "upper echelon" Defendants failed to provide any "corrective actions or consequences" after they were made aware of Plaintiffs' hostile work environment is insufficient to support claims that Defendants directly participated, encouraged, authorized, or acquiesced in the hostile work environment. Absent facts directly implicating any Individual Defendant in discriminatory conduct, Plaintiffs have failed to allege Individual Defendants engaged in any active unconstitutional behavior.

Nor is it enough to simply point at the Individual Defendants' positions within JCPS as "the upper echelon management." For example, in *Silitonga v. Kentucky State University*, No. 3:16-CV-00029-GFVT, 2018 WL 3236055 (E.D. Ky. June 30, 2018), the plaintiffs' claims against the members of Board of Regents sued in their individual capacities were dismissed because the plaintiffs "fail[ed] to allege the Regents, individually, engaged in misconduct . . . ." *Id.* at *6. Similarly, it is not enough for Plaintiffs in this instance to merely point at a group of "upper echelon of management" and claim they were directly involved in the workplace decisions. A court is "not required to accept inferences drawn by [Plaintiffs] if those inferences are unsupported by the facts alleged in the complaint." *Han v. Univ. of Dayton*, 541 F. App'x 622, 627 (6th Cir. 2013) (citations omitted). There are no facts alleging the Individual Defendants engaged in any active unconstitutional behavior toward Sheppard or Spaulding. For this reason, Sheppard and Spaulding have failed to state a hostile work environment claim against the Individual Defendants. Accordingly, these claims will be dismissed for failure to state a claim upon which relief may be granted.

### b) Duncan

Duncan is a black male currently employed as a locksmith by JCPS. (Compl. ¶¶ 20-22). He alleges that on February 2019, a white coworker, Bart Matthew ("Matthew"), routinely used a racial slur while working which was later reported to his superiors by another employee. (Compl. ¶ 23). Duncan alleges that his foreman, Mike Parker ("Parker"), instructed Matthew to falsely claim that he said the racial slur in response to a black employee calling him a "cracker". (Compl. ¶ 24). Duncan then brought these facts to Parker's attention, presumedly to let him know Duncan was aware of the lie. (Compl. ¶ 25). Duncan alleges that, in response, Parker assigned extra work to him and sabotaged his work orders, and otherwise, disciplined him for the incident. (Compl. ¶

9

25). Duncan then brought the entire incident to the attention of Tanner, the Director of Property Management, but alleges the situation never changed. (Compl. ¶ 26).

Duncan has failed to allege Tanner engaged in any unconstitutional behavior. Rather, Duncan's theory rests upon Tanner's position as a Director and his failure to control subordinates, which is insufficient. In *McBrearty v. Kappeler*, No. 5:16-CV-121-JMH, 2017 WL 1217171 (E.D. Ky. Mar. 31, 2017), the plaintiff sued a university professor who allegedly discriminated against her because of her age and also sued the dean of the college. *Id.* at *1. The plaintiff's theory was that the dean "did not take action to unwind any harm that [the plaintiff] experienced once 'he knew of the issue' and that he did not discipline [the professor]." *Id.* at *3. The court dismissed the complaint against the dean because liability cannot rest upon a supervisor's right to control his employees. *Id.* Likewise here Duncan simply alleges Tanner is a member of OSD's management, that Duncan notified Tanner of the alleged hostile work environment, and that the situation never changed. Duncan does not claim that Tanner actively participated in or even tacitly encouraged the alleged unconstitutional conduct of Parker. For this reason, Duncan has failed to state a hostile work environment claim against Tanner. Accordingly, this claim will be dismissed for failure to state a claim upon which relief may be granted.

### iv. Section 1981 - Failure to Hire or Promote Claim

To state a Section 1981 discrimination claim based on a failure to hire or promote, a plaintiff must allege that:

> "(1) [he or she] is a member of a racial minority; (2) that the defendant acted with an intent to discriminate against him on the basis of [his or her] race; and (3) that the defendant's race discrimination concerned one or more of the protected activities enumerated in Section § 1981(a)."

*Cunningham v. Sisk*, 136 F. App'x 771, 775 (6th Cir. 2005) (citing *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996)). While a plaintiff need not allege each and every element of a prima

10

facie case, he or she must "provide 'an adequate factual basis' for a discrimination claim" and "allege sufficient 'factual content' from which a court could 'draw the reasonable inference' of racial discrimination." *Swierkiewicz*, 534 U.S. at 511; *James*, 592 F. App'x at 460-61 (citations omitted).

### a. Easley

Easley is a black female employed as a general maintenance technician by JCPS who allegedly submitted applications to JCPS for various electrician positions numerous times. (Compl. ¶¶ 48-49). Easley alleges that despite being qualified, Defendants have either failed to respond to her applications or have uniformly denied her interviews. (Compl. ¶¶ 49-52). Additionally, Easley alleges that even though Defendants repeatedly informed her that she required a new certification as an electrician, JCPS continued to hire electricians and other maintenance staff who were less qualified than Easley, without regard for their certification, and also engaged in "systematic 'grandfathering'" of electrician certifications for white applicants not licensed in Kentucky. (Compl. ¶¶ 54-55).

This claim, like those referencing the Defendants in the "upper echelon", wholly fails to identify any specific Individual Defendant or allege a direct and active unconstitutional action. Essentially, Easley claims "Defendants" rebuffed her job applications and required an allegedly pretextual certification, and that JCPS hired other less qualified white applicants. These allegations fail to plead a pattern of discrimination in the absence of any facts that an Individual Defendant directly participated in the discrimination. At most "[t]he only allegations of fact are those that would support claims of vicarious liability, which does not exist in this context." *Howell v. Father Maloney's Boys' Haven, Inc.*, No. 3:18-CV-00192-GNS, 2019 WL 1359265, at *3-4 (W.D. Ky. Mar. 26, 2019) (citations omitted). Nor is this remedied by Plaintiffs' conclusory

11

assertion that Individual Defendants "knew or should have known about harassment or discrimination and failed to act . . . ." (Compl. ¶ 92). "Such naked assertions add nothing to the complaint's sufficiency." *White v. Coventry Health & Life Ins. Co.*, 680 F. App'x 410, 415-16 (6th Cir. 2017) (citation omitted).

Easley has failed to allege any active unconstitutional behavior on the part of any Individual Defendant. Accordingly, her failure to hire or promote claim will be dismissed.

### b. Newton & Taylor

Newton and Taylor are a different story; they allege identical facts for their individual discrimination claims. Newton is a Black male and Taylor is Black female, both are currently employed by JCPS as Transportation Coordinators in the Transportation Department. (Compl. ¶¶ 28, 38). In July 2016, Newton and Taylor applied for the position of Manager of Operations, presumedly in the Transportation Department, and were selected for an interview. (Compl. ¶¶ 29-30, 39-40). Plaintiffs allege the hiring committee included only one African American member, Tonya Clinkscales ("Clinkscales"), who was on vacation when they were scheduled to be interviewed. (Compl. ¶¶ 31-32; 41-42). Clinkscales asked Raisor, the Chief Operations Officer, to be included in the hiring process, but Raisor advised her that he wanted to fill the position "ASAP". (Compl. ¶¶ 33, 43). When Clinkscales returned from vacation, however, the position was still not filled. (Compl. ¶¶ 34, 44). At some later time, the position was filled by a Caucasian female, without Clinkscales' participation. (Compl. ¶¶ 35-36, 45-46). Newton and Taylor allege that "Defendants knew or should have known about harassment or discrimination and failed to act . . . ." (Compl. ¶ 92).

Defendants contend that Plaintiffs "do not allege that Raisor engaged in any active, unlawful behavior. Instead, they allege only that he failed to act." (Defs.' Reply 6). Plaintiffs

12

argue they have sufficiently alleged "individual Defendants, *especially Defendant Raisor*, were directly involved in the hiring decisions." (Pls.' Resp. 9 (emphasis added)). Newton and Taylor also direct the Court to the inconsistency between Raisor's words—that he wanted the position filled "ASAP"—and the end result, that the position remained vacant even after Clinkscales returned from vacation and, further still, that it was ultimately filled by a white applicant without her involvement. (Pls.' Resp. 3).

Although an "alleged 'involvement', standing alone is an insufficient basis to proceed against these individuals", "[i]t is enough, under 12(b)(6), to conclude that the Plaintiffs' complaint provides plausible circumstantial evidence to support their allegations." *Weathers v. Ky. State Univ.*, No. 3:09-04-DCR, 2009 WL 1683711, at *3 (E.D. Ky. June 16, 2009); *Libertarian Nat'l Comm., Inc. v. Holiday*, No. 14-63-GFVT, 2016 WL 482325, at *5 (E.D. Ky. Feb. 5, 2016). For example, in *Libertarian National Committee*, the plaintiff alleged he was excluded from a televised political debate based on his political viewpoint and sued several defendants, including a station executive. *Libertarian Nat'l Comm.*, 2016 WL 482325, at *1. The court acknowledged that to the extent the plaintiff's allegations were insufficient to the extent that they rested on the executive's "overall organizational and executive control . . . ." *Id.* at *5. Rather, the plaintiff must have alleged the defendant "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* (citing *Shehee*, 199 F.3d at 300). The Complaint satisfied this standard by specifically alleging: (1) the executive had corresponded with a subordinate regarding the station's criteria for participation in the televised debate, (2) in the correspondence, the executive stated that he wanted to establish the new criteria that day so as to eliminate "the write-in and other candidate from the forum", and (3) the only non-write-in candidate ultimately excluded from the debate under the new criteria was the plaintiff. *Id.*

13

Here, Newton and Taylor have made a similar showing. Although they do not claim that Raisor personally denied their promotion, nor did Raisor explain why he wanted to fill the position "ASAP", but have alleged Raisor's personal involvement in deciding *who* ultimately made the hiring decisions. The allegation that Clinkscales was supposed to be a hiring committee member and sought out Raisor's approval to be included, could support the inference that he was involved in the makeup of the committee and thereby participated in the hiring decision. This is sufficient to allow a reasonable inference that Raisor "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Combs*, 315 F.3d at 558. For this reason, Plaintiffs have stated a failure to hire or promote claim against Raisor in his individual capacity. Accordingly, Defendants' motion is denied as to this claim.

B. **Motion to Strike**

Defendants have also moved to strike Plaintiffs' class allegations from their Complaint. (Defs.' Mot. Strike 7-20). Under Fed. R. Civ. P. 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a motion to strike is to avoid the expense of "litigating spurious issues" by dispensing with them before trial. *CWI, Inc. v. Smartdog Servs., LLC*, No. 1:15-CV-00139-GNS, 2016 WL 2654085, at *3 (W.D. Ky. May 9, 2016) (citing *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)). "When ruling on a motion to strike, the court must view the pleading in question in the light most favorable to the non-moving party." *Boultinghouse v. Herrington*, No. 4:14-CV-00100-JHM, 2016 WL 324527, at *1 (W.D. Ky. Jan. 26, 2016) (citation omitted).

"A defendant may move to strike class allegations even before a plaintiff has filed a motion for class certification." *Eldridge v. Cabela's Inc.*, No. 3:16-CV-536-DJH, 2017 WL 4364205, at

*7-8 (W.D. Ky. Sept. 29, 2017) (citation omitted); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (noting that a motion to strike may come before a motion to certify and that "either plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1)." (alteration omitted) (citation omitted)).  A motion to strike may be brought "by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2).  Accordingly, "a motion to strike is generally considered untimely if filed after the responsive pleading." *Johnson v. Cty. of Macomb*, No. 08-10108, 2008 WL 2064968, at *2 (E.D. Mich. May 13, 2008).  As Plaintiffs note in their response, "Defendants' Motion to [Strike] was made after they filed their Answer, so it is therefore untimely."  (Pls.' Resp. 9 n.4).

Defendants respond that their motion to strike was not premature because it is governed by Rule 23 and not Rule 12(f).  (Defs.' Reply 2 n.1 (citing *Bennett v. Nucor Corp.*, No. 3:04CV00291SWW, 2005 WL 1773948, at *2 (E.D. Ark. July 6, 2005))).  In this jurisdiction, though, "Rule 12(f) is the procedural vehicle for striking class allegations." *Eldridge v. Cabela's Inc.*, No. 3:16-CV-536-DJH, 2017 WL 4364205, at *8 (W.D. Ky. Sept. 29, 2017) (citing *Nevada-Martinez v. Ahmad*, No. 5:15-cv-239-JMH, 2016 WL 7888046, at *3 (E.D. Ky. June 17, 2016)).  Accordingly, this motion is untimely.

"However, because the [Rule 12(f)(1)] authorizes a court to act on its own, the Court may still consider the merits of [Defendants'] motion. *United States v. Villaspring Health Care Ctr., Inc.*, No. 3:11-43-DCR, 2011 WL 6337455, at *10 (E.D. Ky. Dec. 19, 2011) (citation omitted).  Rule 12(f) authorizes a court to *sua sponte* strike an allegation, and "that provision has been interpreted to allow consideration of a late-filed motion to strike in the court's discretion." *Cone v. Hankook Tire Co., Ltd.*, No. 14-1122, 2017 WL 53287, at *2 (W.D. Tenn. Jan. 4, 2017) (citation

15

omitted); *see also Ohio ex rel. DeWine v. Globe Motors, Inc.*, No. 3:18-CV-142, 2019 WL 3318354, at *1 (S.D. Ohio July 23, 2019); *Johnson v. Cty. of Macomb*, No. 08-10108, 2008 WL 2064968, at *2 (E.D. Mich. May 13, 2008). "This grant of judicial discretion has been interpreted to allow the district court to consider untimely motions to strike and to grant them if doing so seems proper . . . ." *Deluca v. Blue Cross Blue Shield of Mich.*, No. 06-12552, 2007 WL 1500331, at *1-2 (E.D. Mich. May 23, 2007) (citation omitted). Some courts have looked to the delay in filing the motion to strike, any prejudice to the plaintiffs, and the reason for the delay. *See Johnson*, 2008 WL 2064968, at *2; *Cone*, 2017 WL 53287, at *2. Others have looked merely to the interest of fairness. *See Ohio ex rel. DeWine*, 2019 WL 3318354, at *1. However, "[i]n general, such motions are disfavored and infrequently granted in this jurisdiction." *CWI*, 2016 WL 2654085, at *3 (citation omitted). As a sister court aptly noted, "[t]his is, in part, 'because plaintiffs generally have the burden of demonstrating that they meet the requirements of Rule 23. Class action defendants, however, are often in control of the information plaintiffs need to meet that burden. Thus, discovery is often appropriate, even necessary.'" *Murdock-Alexander v. TempsNow Emp. & Placement Servs., LLC*, No. 16-CV-5182, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016) (citation omitted).

Besides Defendants' motion being untimely, the Court declines to consider the merits of the motion at this time. Defendants will have ample opportunity to challenge the sufficiency of the class allegations at the certification stage, and Plaintiffs are entitled to have the opportunity to conduct some discovery in support of their class allegations. Accordingly, the Court will deny this motion.

### III. CONCLUSION

For these reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion to Dismiss (DN 9) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff Easley's Title VII claims against the Defendants, Raisor, Tanner, Kirk, and Johnson; and her age discrimination claim against all Defendants are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs' KRS 344.040 and 344.280 claims against Defendants Raisor, Tanner, Kirk, and Johnson are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs' 42 U.S.C. § 1983 claims against Tanner, Kirk, and Johnson are **DISMISSED WITHOUT PREJUDICE**.

2. Defendants' Motion to Strike (DN 10) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

March 23, 2021

cc: counsel of record